UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNARD HOWARD, #243327,

    Petitioner,

v.

SHAWN BREWER,

    Respondent.

CASE NO. 2:15-cv-13765

HON. GEORGE CARAM STEEH

MAG. DAVID R. GRAND

**Respondent's Motion for Dismissal of Petition for Writ of Habeas Corpus under Habeas Rule 4 and Brief in Support**

## Motion

Respondent, Shawn Brewer, through attorneys Bill Schuette, Attorney General for the State of Michigan, and Bruce H. Edwards, Assistant Attorney General, moves this Honorable Court to dismiss the petition for writ of habeas corpus under Habeas Rule 4 on the grounds that it has not been filed within the applicable statute of limitations under 28 U.S.C. § 2244.

On July 16, 1994, Petitioner Bernard Howard and two other men robbed and murdered Marcus Averitte, Reshay Winston, and John Thornton, each of whom died from multiple gunshot wounds.

As a result of a lengthy jury trial held in March of 1995 in the old Recorder's Court[1] in Detroit, Howard was convicted of three counts of first-degree felony murder, Mich. Comp. Laws § 750.316. The State now holds Howard in custody in the Michigan Department of Corrections where he is serving three life-without-parole sentences.

Howard commenced this action under 28 U.S.C. § 2254 by filing a petition with this Court which was signed on September 25, 2015.

Pursuant to local rule 7.1(a)(2)(C), the State asserts that concurrence in this motion was not sought since the nonmovant is an incarcerated prisoner proceeding pro se.

For the reasons explained in the accompanying brief, this Court should dismiss the petition as untimely under Habeas Rule 4.

---

[1] In 1996, the Michigan Legislature abolished the Detroit Recorder's Court and merged its functions with the Wayne County Circuit Court. *See Anthony v. Michigan*, 35 F. Supp. 2d 989, 996-97 (E.D. Mich. 1999).

## Brief in Support of Motion to Dismiss Under Habeas Rule 4

**Howard filed his habeas petition well after the statute of limitations expired, and he has failed to demonstrate that extraordinary circumstances justify equitable tolling. The petition should be dismissed under Habeas Rule 4 as untimely.**

### A. Discussion of controlling authority

Habeas Rule 4 provides that the court can dismiss a habeas petition if it determines that the petitioner is plainly not entitled to relief. And the State can move to dismiss untimely petitions citing Habeas Rule 4. *See Harrison v. Galanza*, No. C 98-3371, 1999 WL 58594, at *1 (N.D. Cal. Feb. 4, 1999).

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides for a one-year statute of limitations after finalization of direct review:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review of the expiration of time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is

3

>    removed if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was originally recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

AEDPA governs the filing date for habeas petitions filed after AEDPA's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). If it has not already expired, the statute of limitations is tolled statutorily by a properly filed motion for post-conviction review or is equitably tolled by the court under limited circumstances. 28 U.S.C § 2244(d)(2).

Where a petitioner appeals to the Michigan Supreme Court, but does not petition the United States Supreme Court for a writ of certiorari, his judgment of conviction is finalized when the time for taking an appeal to the United States Supreme Court expires. That time is 90 days after the Michigan Supreme Court's decision. Sup. Ct.

R. 13. The one-year habeas statute of limitations commences running at that time. *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).

A petitioner may challenge the validity of the judgment of conviction by filing a motion for relief from judgment under the terms in subchapter 6.500 of the Michigan Court Rules. A properly filed application for post-conviction or other collateral review tolls the running of the one-year habeas statute during the pendency of that application. But tolling is effective only when collateral review is properly sought within the limitations period. This means a petitioner must file the proper documents pleading available grounds for relief within the limitations period. "And an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

When the habeas statute of limitations has already expired, a motion for relief from judgment "does not reset the date from which the one-year statute of limitations begins to run." *Johnson v. Hendricks*, 314 F.3d 159, 161-62 (3d Cir. 2002); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *Neal v. Bock*, 137 F.

5

Supp. 2d 879, 884 (E.D. Mich. 2001). This is because there is no remaining period to be tolled. *Smith v. Stegall*, 141 F. Supp. 2d 779, 782-83 (E.D. Mich. 2001).

After completion of state court collateral review, the statute of limitations is not tolled during the pendency of a certiorari petition in the United States Supreme Court seeking review of the denial of state post-conviction relief. *Lawrence v. Florida*, 549 U.S. 327, 329 (2007).

**B.     Discussion of facts and procedural history**

The facts in this case reveal an untimely filing of the habeas petition:

1. Howard was sentenced to life without parole on May 12, 1995.

2. On January 17, 1997, the Michigan Court of Appeals affirmed Howard's convictions. *People v. Howard*, 1997 WL 33354541.

3. On February 24, 1998, the Michigan Supreme Court denied Howard's application. *People v. Howard*, 575 N.W.2d 552 (Mich. 1998) (unpublished table decision).

4. According to the Wayne County Register of Actions, Howard filed a motion for relief from judgment on September 6, 2013. (The motion and attached materials in the Rule 5 materials have signature dates of May 29 and June 29 of 2013.) The "5-29-2013" brief in support expressly states in its caption that the motion "was sent out 5-29-2013 and was never received by the court." Suspiciously several dates on signature pages appear to have been changed from 6-29-2013 to 5-29-2013. The Rule 5 material also includes an amended motion allegedly signed on

6

    July 28, 2013. Although the signature dates precede the September 6, 2013, date the motion was received by the Wayne County Circuit Court, the date received controls because Michigan's prisoner mailbox rule does not apply to motions for relief from judgment.[2]

5. The trial court denied the motion for relief from judgment on March 27, 2014. Wayne Cir. Ct. Order, No. 94-08763-03. On June 2, 2014, the trial court denied a motion for reconsideration.

6. On November 7, 2014, the Michigan Court of Appeals denied Howard's application in a standard order. (Nov. 7, 2014 Mich. Ct. App. Order.)

7. On September 9, 2015, the Michigan Supreme Court denied Howard's application. *People v. Howard*, 868 N.W.2d 901 (Mich. 2015) (unpublished table decision).

8. The habeas petition now before this Court is dated September 29, 2015.

## C.    Argument

Howard's habeas petition is untimely. The petition was not filed within the one-year statute of limitations, and Howard is not entitled to equitable tolling.

---

[2] Until March 1, 2010, Michigan courts did not recognize the prison mailbox rule. *See Kinney v. Dep't of Corr.*, 483 Mich. 944, 766 N.W.2d 809, 811 (Mich. 2009) (Kelly, C.J., concurring) (calling upon the court to adopt a prison mailbox rule). When the rule was adopted on February 25, 2010 (effective May 1, 2010), it was expressly limited to "applications for leave to appeal from decisions rendered on or after March 1, 2010." Mich. Ct. R. 7.205(A)(3).

**The petition is late under § 2244(d)(1)(D)(A)**

In this case, the expiration of time for seeking direct review under 28 U.S.C. § 2244(d)(1)(A) was May 25, 1998—90 days after the Michigan Supreme Court denied Howard's application for leave to appeal on February 24, 1998. Since this date is after the enactment of AEDPA, the period of limitations began running the next day, February 25, 1998. Howard then had one year, until February 26, 1999, within which to file the petition, or to instead properly file an application for state post-conviction or other collateral review, which would toll the one-year statute of limitations period.

Howard did not file a motion for relief from judgment until 2013, which was more than a decade after expiration of the limitations period. Howard's untimely motion did not toll or restart the already expired limitations period.

**The petition is late under § 2244(d)(1)(D)**

Howard presumably contends that 28 U.S.C. 2244(d)(1)(D) applies in this case. Although ordinarily the one-year limitations period runs from the date the conviction becomes final, in appropriate cases it may also commence on "the date on which the factual predicate of the claim

or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). This provision requires a court to review the factual predicate of a petitioner's claims and determine when they could have been discovered. It "does not postpone the accrual of limitations based on a pro se litigant's or an attorney's belated discovery or realization of the legal consequences of known facts. Rather, postponed accrual is in order only if the facts themselves supporting a legal claim were undiscoverable in a timely fashion, despite due diligence." *Fraser v. United States*, 47 F. Supp. 2d 629, 630 (D. Md. 1999).

    Howard's habeas petition was inarguably filed after expiration of the statute of limitations when calculated under 28 U.S.C. § 2244(d)(1)(A). Thus, unless "through the exercise of due diligence" he could not have discovered the factual predicate of his claims less than 12 months before he filed his habeas petition on September 29, 2015, his petition is barred. 28 U.S.C. § 2244(d)(1)(D). The date of the actual discovery of the factual predicate does not matter. The relevant question under 28 U.S.C. § 2244(d)(1)(D) is the date on which it *could have* been discovered through due diligence. *See Redmond v. Jackson*,

9

295 F. Supp. 2d 767, 771 (E.D. Mich. 2003). *See also Stokes v. Leonard*, 36 F. App'x 801, 804 (6th Cir. 2002) (noting that a petitioner who merely asserts that he did not discover the facts underlying his claim until a certain time has not demonstrated due diligence).

Howard's petition raises the following claims: a *Brady* violation, ineffective assistance by trial counsel, ineffective assistance by appellate counsel and an insufficiency of the evidence.

Howard's habeas claims are based on several documents: (1) a memorandum dated February 8, 1995, from a then-assistant Wayne County prosecutor, (2) a July-August 1998 transcribed letter from a fellow inmate, Jonathan Hewitt, (3) a further November 28, 2012, letter from Hewitt, (4) a bare-bones alibi affidavit from Tyiesha Washington dated June 6, 2012.

Howard contends that the February 8, 1995, memorandum is proof that trial witness Joe Twilley was a police informant and that this memo establishes a *Brady v. Maryland*, 373 U.S. 83 (1963), violation. It is not clear when Howard first obtained this 1995 memorandum. But, as the Michigan Court of Appeals indicated in its opinion, "Joe Twilley, who was also an inmate at the jail, but had trustee status, thereby

10

giving him the ability to move about the jail." *People v. Howard*, 1997 WL 33354541, at *2.[3] And, the trial court stated as follows regarding Twilley in denying Howard's motion for relief from judgment:

> The issue concerning newly discovered evidence based on witness Twilley's status as a police informant has been previously raised and decided by the Michigan Court of Appeals. Specifically defendant has previously asserted on appeal that Twilley was a police informant, as such defendant cannot now argue and assert that he has newly discovered evidence that establishes Twilley as a police informant." (*People v. Howard*, No. 94-08763-03, Wayne Cir. Ct. Opinion at *2 (March 27, 2014).)

Thus, the assistant prosecutor's February 8, 1995, memo hardly establishes a *Brady* violation. Further, Howard has not shown that he could not have discovered this February 8, 1995, memo, through the exercise of due diligence, before September 6, 2012 (one year before he filed his motion for relief from judgment).

As for Hewitt's July-August 1998 letter, Howard also has not shown that he could not, with the exercise of due diligence, have found this letter before September 6, 2012.

---

[3] Twilley testified that he had previously pleaded guilty to second-degree murder and felony-firearm. (3/21/1995 Trial Tr. at 80–84.) Counsel for a codefendant argued in closing argument that Twilley was a "professional witness" who would say whatever the police wanted him to say and that Twilley had heard more confessions than Cardinal Miada. (3/27/1995 Trial Tr. at 49–50, 55.)

11

As for Hewitt's November 28, 2012, letter, Howard's motion for relief from judgment was filed within one-year of the date of this letter. But, this letter is simply hearsay from a fellow inmate talking about events that he claims occurred 18 years earlier. It is not a sufficient foundation on which to base a claim that a *Brady* violation occurred.

That leaves Tyiesha Washington's June 6, 2012, bare-bones alibi affidavit. Again, Howard has not shown that with the exercise of due diligence he could not have found Washington before September 6, 2012. Further, as the trial court stated in denying Howard's motion for relief from judgment, "the content and quality of the statements made by these witnesses cast substantial doubt on their credibility." (*People v. Howard*, No. 94-08763-03, Wayne Cir. Ct. Opinion at *3 (March 27, 2014)). Ms. Washington's perfunctory 18-years-after-the-fact hand-written affidavit raises more questions than it answers, and certainly is not a reliable basis on which a habeas claim can be grounded.

With reference to Howard's derivative ineffective assistance of trial and appellate counsel claims, it also cannot reasonably be said that Howard could not, through the exercise of due diligence, have

discovered the factual basis for these claims before September 6, 2012. The same is true of Howard's insufficiency of the evidence claim.

In sum, 28 U.S.C. § 2244(d)(1)(D) does not save Howard's late-filed habeas petition because he has not shown that he could not have, through the exercise of due diligence, discovered the factual predicate for his habeas claims before September 6, 2012 (one year before he filed his motion for relief from judgment, which motion arguably would toll the limitations period *if* it had not already expired).

### 1. Howard is not entitled to equitable tolling

While Howard has failed to demonstrate entitlement to "statutory tolling" to avoid dismissal, he can still avoid dismissal of the habeas petition by demonstrating that "equitable tolling" applies to this case. But Howard has failed to do so.

#### a. The law of equitable tolling

The Supreme Court has held that the habeas statute of limitations is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Equitable tolling is available in habeas challenges to state court convictions only when a litigant can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way . . . .'" *Holland*, 560 U.S. at 649 (quoting

*Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *accord Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749-50 (6th Cir. 2011) (holding that *Holland* replaced the 5-part inquiry of *Dunlap v. United States*, 250 F.3d 1001, 1010 (6th Cir. 2001)).

In order to establish entitlement to equitable tolling, the petitioner bears the burden of demonstrating *both Holland* factors. *Hall*, 662 F.3d at 750; *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). Moreover, equitable tolling should only be granted "sparingly." *Robertson*, 624 F.3d at 784 (citations omitted). Ignorance of the law, illiteracy, and lack of legal assistance do not amount to grounds for equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) ("[I]gnorance of the law alone is not sufficient to warrant equitable tolling.") (internal quotation marks and citation omitted); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) ("[I]nmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations."); *Holloway v. Jones*, 166 F. Supp. 2d 1185, 1189 (E.D. Mich. 2001) (Lack of "professional legal assistance [is] not an extraordinary circumstance which would toll the statute of limitations."); *accord Sperling v. White*, 30 F. Supp. 2d 1246,

1254 (C.D. Cal. 1998) (citing cases stating that ignorance of the law, illiteracy, and lack of legal assistance do not justify tolling).

A petitioner may also pass through the "impediment" of the statute of limitations if he or she can *prove* actual innocence. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). "'[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in the light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Additionally, the federal habeas court "should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown." *McQuiggin*, 133 S. Ct. at 1928. In other words, the court "may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of . . . the evidence of actual innocence." *Id.* at 1935 (quoting *Schlup*, 513 U.S. at 332) (internal quotation marks omitted). For example, if a petitioner waited until an elderly witness died before collaterally attacking his conviction, the timing "should seriously undermine the credibility of the actual-

innocence claim." *McQuiggin*, 133 S. Ct. at 1936. But the Supreme Court cautioned: "tenable actual-innocence gateway pleas are rare . . . ." *Id*. at 1928.

### b. Howard has not shown entitlement to equitable tolling under *Holland* or *McQuiggin*

Howard is not entitled to equitable tolling under *Holland*. Howard did not diligently pursue his rights regarding this petition, nor has he shown that some extraordinary circumstance stood in his way.

Howard is also not entitled to equitable tolling under *McQuiggin* because, while alleging actual innocence, Howard does not support that claim with any new *reliable* evidence. Ms. Washington's affidavit is not the kind of new reliable evidence that might satisfy a *McQuiggin* actual innocence claim. Howard has not set forth a credible claim of actual innocence. In other words, Washington's affidavit is not equivalent to "exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence" and falls far short of satisfying the "demanding" *Schlup* actual innocence standard. Thus, Howard has not established an actual innocence claim under *McQuiggin*.

As noted above, equitable tolling should only be granted "sparingly." Howard has failed to meet his burden of showing that he is entitled to equitable tolling. The untimely petition should therefore be dismissed under Habeas Rule 4.

## Relief Sought

The State respectfully asks this Honorable Court to dismiss Howard's habeas action under Habeas Rule 4 for failure to comply with the statute of limitations. In the alternative, if this Court denies this motion, the State would ask for an additional 60 days to address the merits of Howard's claims in the petition.

        Respectfully submitted,

        Bill Schuette
        Attorney General

        s/<u>Bruce H. Edwards</u>

        Assistant Attorney General
        Criminal Appellate Division
        P.O. Box 30217
        Lansing, MI  48909
        (517) 373-4875
        Edwardsb8@michigan.gov
        P34983

Dated: April 22, 2016

## Certificate of Service

I hereby certify that on April 22, 2016, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

HONORABLE GEORGE CARAM STEEH
MAGISTRATE JUDGE DAVID R. GRAND

and I hereby certify that Kathy Land has mailed by United States Postal Service the papers to the following non-ECF participant:

Bernard Howard, #243327
Muskegon Correctional Facility
2400 S. Sheridan Dr.
Muskegon, MI 49442

        Respectfully submitted,

        Bill Schuette
        Attorney General

        s/<u>Bruce H. Edwards</u>

        Assistant Attorney General
        Criminal Appellate Division
        P.O. Box 30217
        Lansing, MI  48909
        (517) 373-4875
        Edwardsb8@michigan.gov
        P34983