

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

BERNARD HOWARD,#243327,                    CASE NO. 2:15-cv-13765

Petitioner,

v.                                         HON. GEORGE CARAM STEEH

SHAWN BREWER,



JUN - 9 2016

CLERK'S OFFICE
U.S. DISTRICT COURT                        MAG. DAVID R. GRAND

RESPONDENT,

_____

Notice of response to rule 5 materials

Index of record

Certificate of service

_____

Notice

To: UNITED STATES DISTRICT COURT

THEODORE LEVIN UNITED STATES COURTHOUSE

231 WEST LAFAYETTE BLVD. ROOM 564

DETROIT, MICHIGAN 48226

PLEASE TAKE NOTICE that a copy of the response to RULE 5 Material is being

serve upon the Clerk of the United States District Court for the

Eastern District of Michigan, Souther Division, as set forth in the

attached Index of records.

Respectfully Submitted,


BERNARD HOWARD
PRO SE


MUSKEGON CORRECTIONAL
FACILITY
2400 S. Sheridan Dr.
Muskegon, Mi 49442


Dated: **6- 6- 16**

## Index of record

1. Death Certificate of John Thorton showing he was shot with handgun. Probable Cause to pick Petitioner up was based on false facts.


2. Constitutional rights form showing Petitioner was not in custody when Joe Twilley said that he spoke with Petitioner.


3. Legal disbursement showing Petitioner sent 6.500 motion to lower court.


4. Affidavit and Memo from Mr. Agacinski that Respondent failed to mention.



Petitioner states that all exibits attached are all ready in the Respondent's records so the Petitioner did not inclosed these exhibits in Respondents brief because of indigent statics,

## Certificate of notice

I hereby certify that on _6-6-16_ I file the foregoing papers with the Clerk of the Court using the prison mailing system. Which will send notification of such filing to the following:

### HONORABLE GEORGE CARAM STEEH

### MAGISTRATE JUDGE DAVID R. GRAND

and i hereby certify that the postal service will deliver a copy yo

Assistant attorney General

Criminal Appellate Division

P.O. 30217

Lansing, MI 48909

BERNARD HOWARD 243327

Muskegon Correctional Facility

2400 S. Sheridan Dr.

Muskegon, MI 49442

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

BERNARD HOWARD,243327.

Petitioner

CASE NO. 2:15-cv-13765

HON. GEORGE CARAM STEEH

V.

SHAWN BREWER,

MAG. DAVID R. GRAND

Respondent

PETITIONERS RESPONSE TO RESPONDENTS MOTION TO

DISMISS WRIT OF HABEAS CORPUS UNDER

RULE 4 AND BRIEF AND SUPPORT

(1) PETITIONER Sent out A 6.500 Motion Relief From Judgement base on Affidavit from
Ms.Tyiesha Washington 5-29-2013. See Exhibit (A) Legal Disbursement verifying
Petitioner sent this to Wayne County Court.

(2) In the process of refiling. Mr.Harry Reisig investigated a prison Rumor For
Petitioner that a Assistant Deputy Chief of Prossecution had come fourth about
snitches being used in the Detroit Homicide Division See Exhibit (D).

(3) Mr. Agacinski Deputy Chief then verified the rumor by telling Mr.Harry Reisig to
have inmate Howard contact him and he sent a affidavit stating he would be willing to
testify to personal knowledge about the usage of jail house informant's a memo on jail
house snitches was also enclosed with affidavit.

(4) On June 15,2013 Petitioner received memo and notarized affidavit from
Mr.Agacinski. The date on Mr.Agacinskis Affidavit reads June 11,2013 showing that
petitioner time stated at the time petitioner actually received the factual predicate
which was June 15,2013.

(5) Petitioner Re-Submitted his 6.500 motion but added a motion to Amend,the motion to
amend was based on affidavit and memo of Mr.Agacinski.

(6) 28 U.S.C.2244 (d)(1)(D) states The Courts are only concerned with the date on
which the factual predicate could have been discoverd though Due Diligence. See Remond
v Jackson 295 F.Supp.2d 767,7 CE.D Mich.2003. In the case at bar this evidence was
soley inside the prosecutors office while petitioner was inside a cell in the County
Jail. Willis V Jones 329 Fed Appx. 7 2009 WL 1391429 (6th CIR 2009). Held the
Petitioner had shown due diligance for A.E.D.P.A. As timeliness purpose where state
failed to disclose Brady Evidence and the petitioner did not know that the state had
not disclose Brady evidence before petitioner trial in Wayne County Petitioner, and

(1)

Co-defendant's lawyer were acting as one to get all Brady Material's Concerning Joe Twilley which a Brady request was filed that the prosecution acknowledge. See, MH1 PP.102-104 which shows that the prosecution withheld this evidence which made it beyond petitioners control even with diligence Steed v head 219 F.3d 1298. The Brady rule applies when information is discovered after trial that had been known to the prosecution but unknown to the defense United States v Agurs 427 U.S. at 103;96 S.CT 2392 49 LEd 342 (1976)...Date on memo reads Feb. 11, 1995. Trial started March 6, 1995. Easterwood V Champion 213 F.3d 1321, 1323 (10th CIR.2000) stated Due Diligence may not ignore, That petitioner is limited because of incarceration, this does not constitute a failure to act with Due Diligence under § 2244 (d)(1)(D). Petitioner need only demonstrate when a reasonable investigator would have uncovered The Newly Discovered Facts United States V Battles 362 F.3d 1195,1198 (9th Cir 2004). Which also held that a Brady Claim is not time barred because petitioner had attempted to acquire information through Brady request. Which was done in this matter. A 1 year period of limitation shall apply to an application for a writ Habeas Corpus by a person in custody pursuant to the judgement of a State Court. The limitation shall run from the latest of

(A) The date on which the judgement because final by conclusion of  direct review of the expiration of time for seeking such review;

(B) The date on which the impediment to filing an application created by state action in violation of the Constitution or laws of The United States is removed if the Applicant was prevented from filing by such state.

(C) The date on which The Constitional Right asserted was originally recognized by The Supreme Court if the right has been newly reconized by The Supreme Court and made retroactively applicable to cases on collateral review;or

(D)The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of Due Diligence.

A.E.D.P.A (B) governs here because the state knew Joe Twilley was working deals with the police and was giving false testimony because assist Deputy Chief of Prosecution Mr.Agacinski made the prosecution office aware of this through his memo that he personally sent to petitioner that the prosecution in this case with held dispite a Brady request the date on this memo verifies this evidence of police corruption was out before petitioners Brady request and petitioners trial.

A.E.P.D.A (D) Governs here and makes this petition timely because petitioner received affidavit and memo from Mr.Agacinski June 15,2013.Which is 4 days after it was notarized which reads on affidavit June 11,2013. Petitioner startes going from time the factual predicate was discovered June 15,2013 and filing in Wayne County Trial Court was Sept.6,2013 which shows 2 months 21 days from time received and a 6.500,motion filed 6.500 motion was denied Mar.27,2014 by trial court petitioner then filed in Court of Appeals 7-1-2014 which shows 3 months and 6 days between denial from trial court and Court of  Appeals on Nov. 7,2014 Court of Appeals denied petitioners application petitioner then filed in The Michigan Supreme Court on 12-19-2014 which shows 1 month and 11 days between denial in Court of Appeals and filing application in Michigan Supreme Court. Michigan Supreme Court denied application on Sept.9,2015. Petitioner then filed Habeas Corpus on Sept.29,2015 which shows 20 days when added up is 8 months and 18 days. Petitioner is not time barred the respondent in this matter has clearly left out the fact that petitioner submitted affidavits from Mr.Agacinski as well as Mr.Harry Reisig Mr.Agacinski Former Assistant Deputy Chief verifying he sent memo and willing to testify to the factual predicate and Mr.Harry Reisig shows who helped petitioner investigate and obtained the factual predicate. Respondant argues that this does not establish a Brady violation. A Brady violation occurrs when prosecution fails to disclose evidence favorable to defendant either exculpatory or effects the credibility of a goverment witness Brady v Maryland 373 U.S. 83 (1963). This memo from Fromer Assistant Deputy Chief of Prosecution clearly warns the other

(3)

prosecutors that the Detroit Police were pursuing deals through their office and had a
closed door meeting with Judge Shamoo then Judge Shamoo later granted Joe Twilley a
sentence reduction Mr.Agacinski futher noted if this was not disclose to the defense
then the case was subject to prompt reversal the prosecution had a obligation to turn
over any evidence effecting the credibility of a goverment witness. Napue v Illinois
306 U.S. 269. But instead of disclosing this evidence for proper cross examination.
The prosecution knowlingly deceive the trial court hisself. By stating in Joe Twilleys
cross examination by Defense Attorney Shulman, that Judge Shamoo did not grant Joe
Twilley sentence reduction. That Judge Shamoo was order from a higher court to give
Joe Twilley a sentence reduction see VIII T.T.84-85 the prosecution knowlingly
deceived the trial court and jurors which violated Mooney V Holohan 294 U.S. 103 112;
55 S.CT 340. Which enforces that deliberate deception of a court and jurors by a known
representation of false evidence is incompatible with the rudimentary demands of
justice. This was re-affirmed in Pyle v Kansas 317 U.S. 213; 63 S.CT. 177, making this
conviction subject to prompt reversal.

Mr. Agacinski's memo personally warned prosecutors to carefully scrutinized Joe
Twilleys testimony. Joe Twilley testified that he spoke with petitioner Howard before
he gave his first statement July 19th,1994 see VIII TT.108 at McMullens request and
that he did not mention Howards name in his first statement July 19th because he was
not ask about Howard. Petitioners Constitutional Rights Form is dated July 20,1994 at
1:30 at night which shows Joe Twilley giving false testimony to connect petitioner to
Co-defendants petitioner was not in custody on the ninth floor of 1300 Bobuein July
19,1994. The prosecutor cannot say he did not know Joe Twilley was giving false
testimony because of his own closing argument. The prosecution argued in closing
argument. (that Joe Twilley is giving us information before we have arrested Mr.
Howard July 19th,1994.) See XI, TT Pg 21.  Despite Mr. Agacinski's warning Joe Twilley
and the Detroit Police Departments corruption showed during Joe Twilleys cross

(4)

examination and the prosecution turned a blind eye. Joe Twilley was ask if the second
statement that Salisbury confess to him was his. That statement was dated July
22nd,1994, Joe Twilley testified (YES). Then was asked if he ever knew, said, or gave
petitioner Howard's first and last name Joe Twilley answered. (No) he never said,
knew, or gave petitioner's first and last name. See VIII, TT Pg 106-113.
Petitioner's first and last name appeared in parenthesis in Joe Twilleys second
statement dated July 22nd,1994.

This shows that Joe Twilleys second statement was altered. This in lines with
Affidavit from Johnathan Hewitt that the police was giving them pre-written statements
to testify to.

This is the prosecution turning his back to false testimony Joe Twilley testified that
he spoke with Howard and Salisbury July 19th at Mcmullens request, and that he gave a
statement the next day which was July 20, 1994 that Salisbury confess to him. See
Prelim examination PG, 132. The second statement is dated July 22nd showing a false
date as well as false testimony.

The Supreme Court held the goverment's suppression of evidence favorable to the
accused violates Due Process where the evidence is material to guilt or punishment.
Brady v Maryland 372 U.S. 83, 87, 83 S.CT 1194 10 L.ed 2d 215 (1963) Giglio v United
States 405 U.S. 150, 154 92 S.ct 763, 31 L.Ed. 2d 104 (1972) The Supreme Court
extended Brady to require the goverment to disclose Impeachment evidence as well as
exculpatory evidence. To establish a Brady violation a Habeas Petitioner must
demonstrate.

(1). Evidence at issue is favorable to him because it is exculpatory or impeaching.
Joe Twilley testified that he was not a informant for the police and never recieved
deals for his testimony. This evidence clearly shows the police pursuing deals for Joe
Twilley. The prosecution stated in his closing argument that Joe Twilley was a
civilian. See XI, TT, pg 61.

(2). The goverment Suppressed the evidence.

On FEB.17,1994 A motion to sever Petitioner Howard from Co-defendants, was held where

the prosecution acknowlegde that a Brady discovery was filed concerning Joe Twilley.

Attorneys argued that Joe Twilleys testimony could not come in because Joe Twilleys

was a working informant and that Miranda rights had not been read and that Joe

Twilleys testimony was unreliable especially against Petitioner because it was third

party hearsay testimony. This evidence came out Feb.11, 1994. stating that the police

were pursuing undercover deals and were being taking out to eat at Burger King by the

Detroit Police. Petitioner states for the record that Joe Twilley was sentence on

Second Degree Murder to prison and was out with the police eating at restaraunts.

(3). A reasonble probability of a different result must be shown. This evidence would

have shown police corruption, it also would have shown that Joe Twilley was a working

informant, who had something to gain, and the fact that Mr. Agacinski said to

carefully scrtinzed this man testimony would have unvailed false dates on statements,

altered statements, and stopped the spill over prejudice that Joe Twilleys testimony

was creating. By this joint trial of co-defendants who had significant evidence

against them.

### SPILLED OVER PREJUDICE.

McMullen gave a statement that Ms. Bolden pulled up in a red car moments before this

crime took place. Ms. Bolden gave identification of McMullen sitting on the porch

which enterlocked McMullens statement and Ms. Bolden testimony which cause prejudice

when Joe Twilley testified that July 19, 1994 a day that petitioner was not in custody

that petitioner Howard was passing messages back and forth in the police station.

Co-defendant Salisbury was identified on the porch moments before this crime took

place, the Van that was used in this crime was found in front of Salisburys house, the

gun that was used in this crime was found in Salisburys house. (closest). Joe Twilleys

testimony that on July 19th, 1994 that Salisbury and Howard was passing messages and

that Salisbury confess that they used a van and had the gun. Was sinificant evidence

being brought in this trial against petitioner through false testimony. Petitioner states that a different result is probable because without the false testimony of Joe Twilley the prosecutions presentation of facts all showed that it was no way the petitioner was on this porch on a late Saturday night at 12:30 at night committing this crime when no crime took place on that day and at that time.

Evidence is material when it goes to credibility. Wood v Bartholomew 516 U.S. 1, 5 116 S.Ct 7. 133 L.ed 2d 1. Evidence is material if their is a reasonable probability its disclosure would have produce a different result. United States v Bagley. 473 U.S. 667, 682  105 S.ct 3375, 87 L.ED. 2d 481 (1985). This evidence was in fact strong enough to cause severance between petitioner and co-defencdants which would have stopped the spill over prejudice of this joint trial, further more this evidence would have brought forth credible testimony from Mr.Agacinski who would have confirmed not only the deals between the police and Joe Twilley, but also would have giving credibility to the fact that Johnathan Hewitt was also a informant on the ninth floor with Joe Twilley who had come forth about the police corruption. Mr. Hewitt would have named all the underlying officers in this case as the officers they were giving false testimony for. Which were Monica Childs, William Rice. and officer Miles. Which were the same officers that took a confession from Kenneath McMullen that the petitioner was with him and that the petitioner shot victim John Thronton with a all black sawed off 4-10 with black tape on the handle. This was false probable cause victim John Thronton was shot with a handgun. See Exhibit (c) which is Death Certificate of victim John Thronton.

Petitioner had already giving a full statement as to his where abouts the night in question.

Joe Twilley's testimony was essential to the conviction.

A Brady violation rule applies when information is discovered after trial that had been known to the prosecution but unknown to the defense. United States v Agurs 427

(7)

U.S 97 103; 96 S.Ct 2392 49 L.Ed 342 (1976).

Petitioner never received a response on his Brady claim in trial court despite petitioner filing a motion to reconsider the Affidavit of Mr. Agacinski. Petitioner has diligently sought a Evidentiary Hearing thought the lower courts an still request that a Evidentiary Hearing be granted. Walker II, No 04-22. 195 Fed Appx at 175, 177.


Respondent next argued that petitioner Howard was not titled to relief because Tyisha Washington's affidavit was bare bones and not exculpatory scientific evidence, trustworthy eyewitness account or critical physical evidence of Schlup actual innocence standard.

This is a misleading argument by the respondent Ms. Washington's affidavit was filed under Ineffective Assistance of Counsel for trial counsels failure to not only investigate but present petitioner alibi witness. Strickland v. Washington 104 S.Ct 2054 (1984). This issue is solely on Ineffective Assistance of Trial Counsel. Under Strickland petitioner must show counsel's performance was deficient, and that deficiency prejudice the defense. Strickland supra. On any claim of counsel failing to investigate. A decision not to investigate must be directly accessed for Reasonableness in all circumstances. Wiggings v Smith 123 S.ct 2527 (2003).

In the case at bar trial counsel opened to the jury that they would here from Ms. Tyisha Washington. See I-TT PG, 196. The trial record shows that Ms.Washington never testified, and that Petetioner testified that he was with Ms. Washington. This affidavit shows that Ms. Washington was never contacted or spoke with by trial counsel. Trial counsel's deficient performance showed when trial counsel opened stating that Ms. Washington would testify that petitioner was at Jameel Spencers house Saturday night having a party, playing cards.

### Saturday Night.

Ms. Washington was going to confirm that the petitioner was at her house the night in

question.

## FRIDAY NIGHT not Saturday night.

The prosecution based his whole case on the fact that Ms. Washington was not their to testify. See XI, TT, PG 31. The prosecution argued if petitioner was really with Ms. Washington that she would be their to testify.

The trial court stated that their was other Indicia and material evidence that was more then sufficient to prove guilt of petitioner.

Their was three types hearsay testimony used against petitioner.

The first was a confession by Kenneath McMullen stating that the petitioner was with him committing this crime, and that petitioner Howard shot victim John Thronton with a all black sawed off 4-10 12 guage with tape on the handle. Which was a lie victim John Thronton was shot with a handgun. See exhibit (C) Death Certificate of John Thronton. Their is no way possible that Mcmullen could be standing right their and give a perfect description of a shotgun that no one was shot with unless he's lying.

2. Petitioner was then picked up again because of this statement, petitioner had already giving a full statement that he did not commit this crime Friday night. Petitioner never ran, Petitioner also gave his mother and aunties first and last name, home addresses and phone numbers, and gave his son's first and last name. In case the police wanted to speak with him again. Once the petitioner was picked up for the second time, and questioned about the crime that took place July 16th, 1994 1:30 at night. On a Friday Night the same officers named in the police courruption produce a statement that petitioner committed a crime on a day and at a time that no crime was committed. Saturday Night 12:30 at night which was factually impossible.

3. Petitioner was connected to Co-defendants though the testimony of Joe Twilley. Joe Twilley gave two statements that co-defendants McMullen and Salisbury confessed to him and implicated The petitioner.

Joe Twilleys first statement was dated July 19th, 1994. Which stated that McMullen

(9)

confessed this crime to him. Joe Twilley testified that he spoke with petitioner Howard before giving this statement to the police July 19th, 1994. See VIII, TT, pg, 108. This is false testimony petitioner Howard was not in custody July 19th, 1994. Petitioner did not come into custody until July 20, 1994 at 1:30 at night. The prosecution argued in closing argument that Joe Twilley was giving the police information before The petitioner was arrested. See XI, TT, pg 21. Joe Twilley went on to testify that after speaking with Salisbury for McMullen July 19th, that Salisbury confessed this crime to him and he gave a statement the next day that Salisbury confessed to him. See Prelim exam PG, 132. This statement would be dated July 20, 1994. But is dated July 22, 1994. Petitioner was not in custody July 19th so the statement had to be dated July 22nd to be able to incorporate the petitioner into Joe Twilleys testimony that on July 19th he spoke with Petitioner Howard at Mcmullens request. Joe Twilley testified that he never knew said or gave the police petitioners first and last name. See VIII, TT, pg, 106-113. Which shows that the police fabricated the petitioners name into Joe Twilleys second statement, and falsified the date on this statement.

The Trial Court ruling was clearly erroneous and did not in line with the trial record.

The trial court stated they could not properly adjudicate this issue without a Evidentiary Hearing. When petitioner filed for a Evidentiary Hearing to proper adjudicate the merits of this issue. The central teachings of Strickland as Affirmed by Wiggings 539 U.S. 522. That information leading to choice of the so called trial strategy must itself have been reasonably conducted or the strategic choice rest on a rotten foundation. Towns v Smith 395 F.3D 251 (6th Cir 2005) Made this point clear. When error must be place to the state the procedural default must be imputed. Murray v Carrier 477 U.S 478. 488 106 S.Ct 2639. Petitioner has Diligently sought a Evidentiary Hearing.

Petitioner file Ineffective Assistance of Appellate Counsel for failure to file Ineffective Assistance of Trial Counsel for failing to investigate and present alibi witness Ms. Washington. This issue is also govern by Strickland v Washington 466 U.S. 668,687 104, S.CT, 2052. The Law firmly states that an attorney who has presented strong but unsuccessful issues may still be deficient and prejudice by failing to raise issues which would have resulted in reversal on appeal. Matthews v Arbamajtys 92 F. Supp 2d 615 (E.D. Mich 2000). Any procedural bars must be imputed to the goverment on this ineffective assistance of counsel claim. Murray v Carrier 477 U.S 477 478 (1986) Ratliff v United States 999 F.2d 1023, 1026 (6th Cir 1993).

Petitioner filed Ineffective Assistance of Counsel for failure to file a Motion to Dismiss when the prosecutions presentation of facts proved that statement used to bind petitioners over was false at the Evidentiary Hearing. See II, TT, pg,30-40.

The History, purpose and spirit of the Habeas Corpus provision in the Constitution is consistent with the ideal of the goverment not being allowed to deny liberty to an innocent Citizen. Michigan has no interest in depriving an innocent person of their liberty. Mich Const. 1963 ART 1.

A dead bang winner is a issue that is obvious from the record. United States v Cook 45 F.3d 388, 395 (10th Cir 1995) and cannot be barred. The prosecution showed clear evidence that on Friday night the victims were sleep and ordered out of bed late Friday night July 16th, 1994.

The prosecution argued that photo's of the victims half dressed Reshay Winston with nothing but panties on Breast exposed, and her boyfriend with nothing but boxers on was proof that on Friday night they were ||rdered from bed. See II,TT, PG, 33. The prosecution also presented testimony at Prelim Exam from prosecution witness Ms. Bolden, who testified "that when she went into this house Friday night that the victims were sleep". See Prelim Exam PG, 99. **Judge Ford reviewed this evidence and stated that their was absolutely know question that the prosecution was right. See II,**

TT, PG, 34. Which made it clear that if these facts were true about this crime taking place Friday night, then their was no way possible that Saturday night the petitioner went into this house to commit this crime and the victims was up walking around the house and petitioner ordered the victims to the floor on saturday night.

A defendant is entitled to effective Assistance of Counsel at critical stages of proceedings. The court's decision in Gideon v Wainwright 372 U.S. 335, 83 S.Ct 792, 9 L.ED 2d 799 (1963) established the right of state criminal defendants to the guiding hand of counsel at every step in the proceedings against them. The prosecutions presentation of facts clearly showed that the petitioner was bind over from false testimony that on Saturday night two men approached petitioner on the victims porch and around 12:30 Saturday night petitioner committed this crime when no crime took place on this day and at this time.

The Amendment requires not merely the provision of counsel to the accused but assistance. Which is to be for his defence at trial when the accused is confronted with both the intricacies of the law and the advocacy of public prosecution. United States v Ash 413 U.U. 300, 309. This requires reversal.


Petitioner raise that Appellate Counsel was Ineffective for failing to raise that trial counsel was Ineffective for failing to file Motion to Dismiss. This issue is under the provision of Strickland v Washington 104 S.Ct 2054. The trial record shows this issue as clear as day. The Court in Miller. V United States examined the standard for such a claim and held that Appellate Counsel is Ineffective if Counsels fails to raise issues that are obvious from the trial record that are obvious and clearly stronger then the ones raised. 29 F.3d 1107, 1112. (7th Cir). Procedural default has to be imputed to the state on this ineffective assistance of appellate counsel claim. Murray v Carrier 477 U.S. 477, 478 (1986) Ratliff v United States 999 F.2d 1023, 1026 (6TH Cir 1993)

Petitioner raise Insufficient Evidence for the first time on appeal under the provision of  Jackson v Virginia 443 U.S. 307, 99 S.Ct 2781; 61 L.Ed 560 (1979) because the prosecutions whole case proved the petitioners statement was false. The prosecution never actually place the petitioner at the crime at the time the crime was actually being committed, The prosecution presented nothing but conflicting testimony against petitioner. Prosecutions witnesses Ms. Bolden, and Ms. Wilson both gave conflicting testimony. Evidence produced at trial was suppose to establish trust worthyness in a confession. United States v Finwick 177 F.2d 488.

False confession claims are beyond the common knowledge of the jury's. People v Kowalski 492 Mich 106 821 N.W.2d (2012) United States v Belyea 159 F.Appx 525 (4th Cir 2005).

The courts are gate keepers to keep innocent men from being Convicted of false confessions Opper v United States 348 U.S 84; 75 S.Ct 150. Corroboration depends on the facts of each case United States v Chimal 976 F.2d 608. The Trial record proves confession is false. Prosecution witnesses Ms. Bolden. V-TT PG 30-40. Ms. Wilson II, TT, PG, 14-40 as well as the prosecutions closing argument proves this confession is false XI, TT, PG, 1-40.  the prosecutions presentation of facts at evidentiary hearing proved statement was false. Ms. Boldens testimony at prelim exam pg, 99 proved statement was false. it would be a complete Miscarriage of Justice not to here this issue. Coleman v Thompson supra.

(13)

*INV. + Rept.*

# M E M O R A N D U M

## WAYNE COUNTY PROSECUTOR'S OFFICE

TO:    Richard Padzieski,
       Chief of Operations

FROM:  Robert Agacinski,
       Deputy Chief, P.R.O.B.

DATE:  February 8, 1995

### MEMO ON JAIL INFORMANTS

SUBJECT:  <u>POLICE USE OF PRISONERS TO OBTAIN CONFESSIONS</u>

I have been approached by several attorneys (Mary Ellen O'Connell
Dawn Ison, Robert Slameka) who have informed me of the practice
of some police investigators to place prisoners on the 9th floor
of 1300 Beaubien (the prisoner lock-up) in the expectation that
they will overhear confessions of other suspects and testify to
these jailhouse confessions in court.

There are three separate issues that should concern us.

First, if the "snitches" initiate the conversations that lead to
confessions, <u>Miranda</u> is violated since these prisoners are acting
as police agents.

Second, promises of leniency are made to these snitches without
our approval - or prior knowledge - which exceeds police
authority and violates our policies.

Third, I have been told that the snitches do lie about
overhearing confessions and fabricate admissions in order to
obtain police favors or obtain the deals promised.

Mary Ellen O'Connell presented me with the case of her client,
Johnathan Davis, AKA, John Huet who has three separate robbery
cases pending.  She said homicide (Squad 7) transferred him to
the 9th floor of the police station to obtain confession.  She
said he reported hearing three--one of which was a fabrication.
[Tom Beadle has this last matter and believes Mr. Huet (Davis)
indeed is lying about that confession--the sole evidence against
that defendant.]

Dawn Ison talked to me last week about a client, Solomon Tolbert,
charged with Robbery Armed and promised a sentence of 1-20 years
for his cooperation.  He has been taken by Royce Alston of the
Violent Crimes Task Force to Burger King and other places in
order to cooperate with the police.  No promises were made to
this defendant by our office.

Finally, Bob Slameka introduced me to two men (Joe Twilley and
Oliver Cohen--now deceased) who were kept as police prisoners on
the 9th floor and obtained confessions in several cases I am
aware of, including a case I personally tried last month.  Dale
Collins and Bill Rice of DPD Homicide asked us to have
Mr. Twilley's sentence on a murder conviction reduced.  We
wouldn't.  They personally went to Judge Shamo and talked with
him in chambers, and then later, Judge Shamo granted a "pro per"
motion for a new sentence.

# AFFIDAVIT

Robert Agacinski, being first duly sworn, deposes and says:

1.  I can testify from personal knowledge as to the matters recited in this Affidavit.

2.  I am currently the Grievance Administrator for the Michigan Attorney Grievance Commission. Before that I worked as the Deputy Chief Assistant Prosecutor for the Wayne County Prosecutor's Office.

3.  In 1995, I was approached by several defense attorneys who regularly practiced in the then-Recorder's Court with concerns that certain police investigators were placing prisoners on the 9th floor of 1300 Beaubien in order to act as informants by overhearing confessions, and then testify to the jailhouse confessions in court.

4.  I was concerned about these issues, and authored the Memorandum attached to this Affidavit as Exhibit 1. The Memorandum outlines the concerns that were related to me at that time.

Date:

Robert L. Agacinski

State of Michigan
County of Wayne

Signed and sworn to personally before me by Robert L. Agacinski on: June 11, 2013
Marissa LaRocque

Notary Public, Macomb County, Michigan
Acting in Wayne County
My commission expires: August 10, 2014

{00165425.DOCX}

MICHIGAN DEPARTMENT OF CORRECTIONS
**DISBURSEMENT AUTHORIZATION (EXPEDITED LEGAL MAIL - PRISONER)**

4835-3318 5/02
CSJ-318

**Please PRINT clearly illegible and/or incomplete forms will not be processed.**

3-140-R
Lock

IBC
Institution

243327
Prisoner Number

Bernard Howard
Prisoner Name (Print Clearly)

☑ Legal Postage  ☐ Filling Fee $_____  ☑ Certified Mail (Must Be a Court Ordered Requirement)

☐ New Case  ☐ Case Number  94-08763-03

Pay To: IBC

Mailing Address: Judge Timothy M Kenny Room 602 Frank Murphy Hall of Justice 1441 St Antoine Det MI 48226-2384 (Two Envelopes)

*The following section must be completed in Authorizing Staff Member's presence.*

Prisoner Signature:_____ Date & Time Submitted:_____

Received By
(Print Name & Title)_____ Staff Signature:_____

Date & Time Received by Authorizing Staff_____

**Authorization Denied:**

☐ Does not meet definition of legal mail or court filing fee as identified in CFA OP 05.03.118.

☐ Not hand delivered to authorizing staff member.  ☐ New case or case number not on form.

☐ Does not include court order for handling as certified mail.  ☐ Other _____

☐ Prisoner refused to sign & date in staff member's presence. _____

Section below to be completed by Mail Room Staff

Placed in Mail By_____ Signature_____

Postage Amount_____ Date & Time placed in Outgoing Mail_____

**Only Business Office Staff are to Write in the Section Below**

| Obligation Amount | Actual Expense | |
|---|---|---|
| | | ☐ Court filing Fee Denied due to NSF. |
| | | |
| | | Date Posted: _____ |
| | | Date & Time Copy Sent to Prisoner: _____ |

Processed By
(Print Name & Title): _____  Signature: _____

DISTRIBUTION:  White - Prisoner Accounting  Canary - Prisoner  Pink - Counselor's File  Goldenrod - Prisoner

Exhibit M Pg3



*Edward H. McNamara*
*County Executive*

ON the 17th day of July in the year 1994, at the Wayne County Medical Examiner's Office, in accordance with the provisions of law, there was made an examination of the body and personal inquiry into the cause and manner of the death of JOHN THORNTON, a 22 year old black male, who was pronounced dead at 5223 Eastlawn, Detroit, Michigan, on the 16th day of July in the year 1994.

IT IS MY OPINION that death was caused by multiple gunshot wounds. There were six entrance wounds of the left arm. The bullets perforated the arm and exited. There was an entrance wound of left back. The bullet perforated the skin and exited. There were two entrance wounds of left lateral chest and one of right buttock. The bullets perforated the ribs, liver, intestines, spine and lungs. Three large caliber jacketed bullets were recovered. No evidence of close range firing noted on the skin.

The manner of death is homicide.

KALIL JIRAKI, M.D.
Assistant Medical Examiner

CASE NO:6451-94

August 2, 1994
KJ/cl

OFFICE OF THE MEDICAL EXAMINER
400 E. LAFAYETTE, DETROIT, MICHIGAN 48226 • (313) 224-5640 • FAX (313) 224-2183 & 224-7917

Subject:  Appeal assistance for Bernard Howard  243327

To whom it may concern:

As part of the assistance I have given Mr. Howard, I have performed numerous web searches. These searches found newspaper articles and other references that he has used in making his appeal.

One of these searches was to locate Mr. Robert Agacinski.  Mr. Agacinski was a lawyer for the Wayne County Prosecutor at the time of Mr. Howard's prosecution.  He is now affiliated with The Attorney Grievance Commission of Michigan.

I also contacted Mr. Agacinski concerning an interoffice memorandum he authored while working in the prosecutor's office.  We talked by telephone.  He confirmed he wrote this document.  He also informed me he would provide Mr. Howard with an affidavit about this document if he requested one.

If you have any further questions feel free to contact me.

Sincerely,

Harry Reisig, Jr.

418 W. Fifth St.

Monroe, MI  48161-2412

734-241-0227

CHERYL L WYATT
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF MONROE
My Commission Expires Jan. 17, 2020
Acting in the County of Monroe

6 3-13

 **detroit police**

# CONSTITUTIONAL RIGHTS
## CERTIFICATE OF NOTIFICATION

*BERNARD CORNELIUS HOWARD B/M/18 (2-24-76)*

I understand that:

*BH* 1. I have a right to remain silent and that I do not have to answer any questions put to me or make any statements.

*BH* 2. Any statement I make or anything I say will be used against me in a Court of Law.

*BH* 3. I have the right to have an attorney (lawyer) present before and during the time I answer any questions or make any statement.

*BH* 4. If I cannot afford an attorney (lawyer), one will be appointed for me without cost by the Court prior to any questioning.

*BH* 5. I can decide at any time to exercise my rights and not answer any questions or make any statement.

I understand that these are my rights under the Law. I have not been threatened or promised anything, and I now desire and agree to answer any questions put to me or to make a statement.

In the presence of:

_____     X *Bernard Howard* X
WITNESS                        SIGNATURE

_____     *7/20/94*           *2:10 AM*
WITNESS                        DATE                TIME

☑ This certificate of notification was read ~~to~~ *by* the suspect, and he/~~she~~ had an opportunity to read it. Further, the suspect was given an opportunity to ask any questions that he/~~she~~ might have concerning this certificate and his/~~her~~ rights.

☐ Suspect is illiterate. He/she has had the rights under the law, as defined above, explained to him/her, and has agreed to answer questions or make a statement.

☐ Suspect can read and write. The rights, as defined above, have been explained to him/her, and he/she has agreed to make a voluntary statement but has refused to sign this certificate.

REMARKS: *Suspect Has Completed 10 yrs of School @ Southeastern*
*H.S. Suspect Read Rights 1-5 and Stated He Understands*
*His Rights.*

_____     P.O. *Steve Mylen* - HOM I.
                              OFFICER                         PCT./SECTION

_____     _____
DATE          TIME            OFFICER                         PCT./SECTION
*1360 BEAUBIEN*
PLACE

C of D-78-CE (Rev. 8-75)   D.P.D. 342-B

Received thru GCS-DRG3
Muskegon Correctional Facility
2400 S. Sheridan Dr.
Muskegon, MI 49442



To Honorable George Carum Stech
United States District Court
Theodre Levin United States Court
House, 231 West Lafayette Blvd
Room 564, Det MI 48226