UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNARD HOWARD, #243327,

              Petitioner,

v.                                  CASE NO. 2:15-CV-13765
                                  HONORABLE GEORGE CARAM STEEH

SHAWN BREWER,

              Respondent.
_____/

## OPINION & ORDER GRANTING RESPONDENT'S MOTION TO DISMISS, DENYING RELIEF ON POTENTIALLY-TIMELY CLAIM, DISMISSING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING PETITIONER'S MOTION TO STAY PROCEEDINGS, DENYING A CERTIFICATE OF APPEALABILITY, & DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

### I. INTRODUCTION

Michigan prisoner Bernard Howard ("petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is being held in custody in violation of his constitutional rights. He was convicted of three counts of first-degree felony murder and one count of possession of firearm during the commission of a felony following a jury trial in the Recorder's Court for the City of Detroit (now part of the Wayne County Circuit Court) in 1995 and was sentenced to concurrent terms of life imprisonment without parole on the murder convictions and a consecutive term of two years imprisonment on the felony firearm conviction. The matter is before the Court on respondent's motion seeking dismissal of the petition as untimely under the one-year statute of limitations applicable to

federal habeas actions, as well as Petitioner's subsequently filed motion to stay the proceedings. Having reviewed the matter, the Court concludes that the petition is untimely and must be dismissed for failure to comply with the one-year statute of limitations set forth at 28 U.S.C. § 2244(d). Additionally, to the extent that one habeas claim may be timely, the Court concludes that the claim must nonetheless be dismissed for lack of merit. The Court further concludes a stay is unwarranted. Lastly, the Court concludes that a certificate of appealability and leave to proceed in forma pauperis on appeal should be denied.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner's convictions arise from his participation with co-defendants Kenneth McMullen and Ledon Salisbury in the robbery and shooting deaths of three people in Detroit, Michigan on July 16, 1994. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, see 28 U.S.C. § 2254(e)(1); Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendants' convictions stem from the July 16, 1994, robbery and shooting deaths of three individuals, Marcus Averitte, Reshay Winston, and John Thornton, each of whom died from multiple gunshot wounds. Testimony indicated that marijuana, cash, and other items of personal property were stolen from the victims. Witnesses at trial placed McMullen, Salisbury and a third unidentified individual at the scene of the crime near the time of the shootings. The police investigation produced evidence that the victims were shot with three different firearms. One witness heard a barrage of gunshots and then observed a van, which she later identified as belonging to codefendant Salisbury, pull away from the crime scene at a high rate of speed. A subsequent search of codefendant Salisbury's house led to the discovery and seizure of a Glock 9mm semi-automatic pistol that was later identified as one of the firearms used in the offense.
>
> Shortly after the offense, the police obtained a written statement from defendant McMullen, wherein McMullen admitted assisting Howard and Salisbury in the commission of the offenses. However, McMullen claimed that it was Howard and Salisbury who shot the victims and McMullen denied either possessing a gun or shooting any of the victims himself. The police

also obtained a written statement from defendant Howard, wherein Howard admitted assisting McMullen and Salisbury, but Howard denied possessing any gun himself and claimed that it was McMullen and Salisbury who shot the victims. Both statements were introduced at trial, but the jury was instructed that each statement was admissible only against the defendant who made the statement and could not be considered against the other defendant.

Following their arrests, McMullen, Howard and Salisbury were all placed in the Detroit Police Headquarters' jail where they allegedly met Joe Twilley, who was also an inmate at the jail, but had trustee status, thereby giving him the ability to move about the jail. Twilley claimed that McMullen and Salisbury both spoke to him about the charged offense and both told him that all three of them, McMullen, Howard and Salisbury, committed the offenses together and that all three of them were armed with guns and participated in shooting the victims. The statements by McMullen to Twilley and Salisbury to Twilley were both admitted at trial, not only against the defendant who made the statement, but also as substantive evidence against each of the other codefendants implicated in the statement.

McMullen and Howard both presented an alibi defense. Also, they each took the stand and denied any involvement in the offenses. Both admitted signing their respective police statements, but claimed they were coerced into doing so by the police, who, they claimed, fabricated the events described in the statements. McMullen and Howard both denied discussing the offense with Joe Twilley.

People v. Howard, No. 186972, 1997 WL 33354541, *1-2 (Mich. Ct. App. Jan. 17, 1997) (unpublished).  At the close of the joint trial with one jury for petitioner and McMullen and a separate jury for Salisbury, petitioner's jury convicted him of three counts of first-degree felony murder, three counts of second-degree murder, three counts of armed robbery, and one count of felony firearm.  The trial court vacated the second-degree murder convictions and sentenced petitioner to concurrent terms of life imprisonment without parole on the first-degree felony murder convictions, concurrent terms of life imprisonment on the armed robbery convictions, and a consecutive term of two years imprisonment on the felony firearm conviction.

Petitioner filed an appeal of right with the Michigan Court of Appeals raising claims

concerning the admission of the co-defendants' statements to fellow prisoner Joe Twilley, the admission of his own police statement, the denial of his request for a separate trial from both co-defendants or a separate jury from McMullen, the exclusion of certain testimony, and double jeopardy.   The Michigan Court of Appeals vacated his armed robbery convictions and sentences on double jeopardy grounds, but denied relief on the other claims and affirmed his first-degree felony murder and felony firearm convictions and sentences. Id. at *2-6.  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.  People v. Howard, 456 Mich. 936, 575 N.W.2d 552 (Feb. 24, 1998).

On September 6, 2013, petitioner filed a motion for relief from judgment with the state trial court asserting that:  (1) he is entitled to a new trial based upon newly-discovered evidence, a July-August, 1998 letter (signed on April 2, 2001) and related November 28, 2012 affidavit from prisoner Jonathan Hewitt-El,  which shows that Joe Twilley was a police informant who gave false testimony at trial and shows that he is actually innocent, (2) trial counsel was ineffective for failing to challenge the prosecution's case, for failing to show that petitioner's confession was false and move for dismissal, and for failing to contact an alibi witness, Tyiesha Washington (supported by a June 6, 2012 affidavit), (3) the prosecutor engaged in misconduct, (4) the prosecution presented insufficient evidence of guilt, and (5) appellate counsel was ineffective for failing to raise issues on appeal.  The court denied the motion finding that petitioner raised the claim that Joe Twilley was a police informant on direct appeal and was denied relief thereby precluding further review, that affidavits from Jonathan Hewitt-El and Tyiesha Washington were not newly-discovered, were of doubtful credibility, and were not of such a nature as to render a different result on

-4-

re-trial given the other evidence of guilt presented at trial, that petitioner failed to show that trial counsel or appellate counsel were ineffective, and that petitioner failed to establish good cause or actual prejudice under Michigan Court Rule 6.508(D)(3) for failing to raise his prosecutorial misconduct and insufficient evidence claims on direct appeal. People v. Howard, No. 94-08763-03 (Wayne Co. Cir. Ct. March 27, 2014). Petitioner filed a motion for reconsideration in which he attached a February 8, 1995 memo and related June 11, 2013 affidavit from former Wayne County Deputy Chief Assistant Prosecutor Robert Agacinski stating that certain defense attorneys had reported that certain prisoners, including Joe Twilley, were intentionally used as police informants and that Twilley's sentence was reduced due to his cooperation. The trial court denied reconsideration on June 2, 2014.

Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied pursuant to Michigan Court Rule 6.508(D). People v. Howard, No. 322503 (Mich. Ct. App. Nov. 7, 2014). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. People v. Howard, 498 Mich. 871, 868 N.W.2d 901 (Sept. 9, 2015).

Petitioner dated his federal habeas petition on September 29, 2015. He asserts the following claims as grounds for relief: (1) newly-discovered evidence of a Brady violation, (2) ineffective assistance of trial/appellate counsel for failure to investigate and present an alibi witness, (3) ineffective assistance of trial/appellate counsel for failure to file motion to dismiss (due to a false confession), and (4) insufficient evidence. Respondent seeks dismissal of the petition asserting that it is untimely. In reply, petitioner contends that the petition is timely and/or that he is entitled to equitable tolling of the one-year period.

Petitioner also seeks to stay the proceedings asserting that he has newly-discovered evidence and that his petition contains exhausted and unexhausted claims.

## III.  DISCUSSION

### A.      Timeliness of Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 et seq., became effective on April 24, 1996.  The AEDPA governs the filing date for this action because petitioner filed his petition after the AEDPA's effective date.  Lindh v. Murphy, 521 U.S. 320, 336 (1997).  The AEDPA includes a one-year period of limitations for habeas petitions brought by prisoners challenging state court judgments. The statute provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). A habeas petition filed outside the proscribed time period must be dismissed. See Isham v. Randle, 226 F.3d 691, 694-95 (6th Cir. 2000) (dismissing case filed 13 days after the limitations period expired); Wilson v. Birkett, 192 F. Supp. 2d 763, 765 (E.D. Mich. 2002).

Petitioner's convictions became final after the AEDPA's April 24, 1996 effective date. The Michigan Supreme Court denied leave to appeal on direct appeal on February 24, 1998. Petitioner's conviction became final 90 days later, see Jimenez v. Quarterman, 555 U.S. 113, 120 (2009) (a conviction becomes final when "the time for filing a certiorari petition expires"); Lawrence v. Florida, 549 U.S. 327, 333 (2007); S. Ct. R. 13(1), on or about May 25, 1998. Accordingly, petitioner was required to seek federal habeas relief by May 25, 1999, excluding any time during which a properly filed application for state post-conviction or collateral review was pending in accordance with 28 U.S.C. § 2244(d)(2).

Petitioner filed his motion for relief from judgment with the state trial court on September 6, 2013. Thus, the one-year limitations period expired more than 14 years before petitioner sought state post-conviction or collateral review. A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled. Hargrove v. Brigano, 300 F.3d 717, 718 n. 1 (6th Cir. 2002); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000); see also Jurado, 337 F.3d at 641. Furthermore, the AEDPA's limitations period does not begin to run anew after the completion of state post-conviction proceedings. Searcy v. Carter, 246 F.3d 515, 519 (6th Cir. 2001).

Petitioner does not contend that the State created an impediment to the filing of his habeas action or that his habeas claim is based upon newly-created retroactively applicable

-7-

rights which would warrant habeas relief.  Rather, he asserts that certain habeas claims are based upon newly-discovered facts – a February 8, 1995 memo and related June 11, 2013 affidavit from former Wayne County Deputy Chief Assistant Prosecutor Robert Agacinski, a July-August, 1998 letter (signed on April 2, 2001) and related November 28, 2012 affidavit from prisoner Jonathan Hewitt-El, and a June 6, 2012 affidavit from potential alibi witness Tyiesha Washington.

As an initial matter, the Court notes that petitioner's third and fourth habeas claims alleging ineffective assistance of trial/appellate counsel for failure to file a motion to dismiss (due to a false confession) and insufficient evidence are not based upon newly-discovered evidence.  Those claims were available to petitioner at the time of his trial, direct appeal, and/or well before the expiration of the one-year limitations period.  Thus, the one-year statute of limitations as to those claims expired in 1999 – well before petitioner filed the instant petition.  See Ege v. Yukins, 485 F.3d 364, 373-74 (6th Cir. 2007) (Section 2244(d)(1)(D) delayed start of due process claim based upon new evidence, but did not delay start of the limitations period for ineffective assistance of counsel claim which was not based upon new factual predicate); DiCenzi v. Rose, 452 F.3d 465, 469-70 (6th Cir. 2006) (ruling that limitations period on delayed appeal claim began on different date than sentencing claims); see also Pace v. DiGuglielmo, 544 U.S. 408, 416, n. 6 (2005) (noting that § 2244(d)(1)(A) provides for calculating the limitations period for the "application" as a whole and §§ 2244(d)(1)(B), (C), (D), require claim-by-claim review).  Furthermore, as discussed infra, petitioner fails to demonstrate that he is entitled to equitable tolling of the one-year period.  His third and fourth habeas claims alleging ineffective assistance of trial/appellate counsel for failure to file a motion to dismiss (due to a false confession) and

insufficient evidence are thus untimely and barred by the statute of limitations.

With regard to newly-discovered evidence under 28 U.S.C. § 2244(d)(1)(D), the limitations period begins when the factual predicate for the claim could have been discovered through the exercise of due diligence, not when it was actually discovered by the petitioner. Lott v. Coyle, 261 F.3d 594, 605–06 (6th Cir. 2001); Brooks v. McKee, 307 F. Supp. 2d 902, 905-06 (E.D. Mich. 2004) (citing cases). The period begins when the petitioner knows or could have discovered the important facts for the claim, not when the petitioner recognizes the legal significance of those facts. Brooks, 307 F. Supp. 2d at 905-06. Moreover, the start of the limitations period "does not await the collection of evidence which supports the facts." Id. at 906. A habeas petitioner bears the burden of showing that he exercised due diligence in discovering the factual predicate for his claims. DiCenzi, 452 F.3d at 471.

As to petitioner's second habeas claim alleging that trial/appellate counsel were ineffective for failing to investigate and present an alibi witness, petitioner submits an affidavit from Tyiesha Washington signed on June 6, 2012 in which she states that petitioner was at her house playing cards at the time of the crimes, but counsel never contacted her. This information, however, is not new. Petitioner was aware of Washington at the time of trial. In fact, he and a defense witness testified that they were at Washington's house playing cards on the night of the crimes. Petitioner thus knew about Washington's potential to be an alibi witness, and knew that counsel did not call her as a witness, at the time of his trial and direct appeals – and well before the one-year limitations period expired. Her affidavit does not constitute newly-discovered evidence. As noted, the limitations period does not await the collection of evidence to support the facts. Petitioner

was also not diligent in securing Washington's affidavit given that it was signed 17 years after trial. Washington's affidavit does not serve to re-start the one-year limitations period.

Furthermore, even assuming that petitioner was unable to obtain Washington's affidavit until she signed it on June 6, 2012, petitioner did not properly file his motion for relief from judgment with the state trial court until September 6, 2013 – more than one year later. Thus, even under this alternate scenario, petitioner's ineffective assistance of trial/appellate counsel claim arising from the failure to produce Washington as an alibi witness is untimely and subject to dismissal.

Petitioner's remaining claim is his first claim alleging that the prosecution withheld evidence that Joe Twilley was a police informant who testified falsely about his status and re-sentencing. In support of this claim, petitioner submits a February 8, 1995 memo (and related June 11, 2013 affidavit) from former Wayne County Deputy Chief Assistant Prosecutor Robert Agacinski stating that certain defense attorneys had reported that certain prisoners, including Twilley, were intentionally used as police informants and that Twilley's sentence was reduced due to his cooperation. Petitioner also submits a July-August, 1998 letter (signed on April 2, 2001) and related November 28, 2012 affidavit from prisoner Jonathan Hewitt-El indicating that he and Twilley served as police informants and witnesses in several cases, were told what to say by the police, and were granted special privileges for their cooperation.

Petitioner, however, made such arguments about Joe Twilley at the time of his trial and direct appeals. He thus was aware of the underlying factual basis for these claims as early as 1995. In that sense, the information he now presents does not give rise to a new claim, but rather serves to support the challenges to Twilley's credibility that he already

made. As noted, the limitations period does not await the collection of evidence to support the factual basis for a claim.

Nonetheless, assuming that there is a new factual basis for this claim, petitioner fails to establish that he could not have discovered the information, through the exercise of due diligence, in a more timely manner. Agacinski's memo is from 1995 and Hewitt-El's letter is from 1998. Petitioner contends that he first became aware of the information through prison rumors, but does not indicate how or when he did so. He further states that he received the materials in 2012 and/or 2013 – but fails to sufficiently explain why it took him more than 14 years after his convictions became final to obtain them. The lack of diligence is particularly notable given that the issue of Joe Twilley's status as a police informant and his re-sentencing were discussed and argued at trial and on appeal and given that petitioner received the information from fellow prisoners and his own investigator. With the exercise of reasonable diligence, petitioner could have obtained the materials and discovered the factual basis for his Brady/false testimony claim in a more timely fashion. The claim is thus untimely and subject to dismissal.

Furthermore, and alternatively, even if petitioner could not have discovered Agacinski's memo and Hewitt-El's letter sooner such that this particular claim is timely, it is nonetheless subject to dismissal for lack of merit. See discussion infra.

The United States Supreme Court has confirmed that the habeas statute of limitations is not a jurisdictional bar and is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). The Supreme Court has further verified that a habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented

timely filing." Id. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Robertson v. Simpson, 624 F.3d 781, 783-84 (6th Cir. 2010).  A petitioner has the burden of demonstrating that he is entitled to equitable tolling.  Allen v. Yukins, 366 F.3d 396, 401 (6th Cir. 2004).  "Typically, equitable tolling applied only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."  Jurado, 337 F.3d at 642 (quoting Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 560 (6th Cir. 2000)).

Petitioner makes no such showing.  He fails to sufficiently explain why it took him 14 years after the expiration of the one-year statute of limitations period to seek state collateral review and subsequently pursue federal habeas relief on his claims (particularly those not based on the alleged "newly-discovered" evidence).  The fact that petitioner is untrained in the law, may have been proceeding without a lawyer for a period of time, may have been mistaken about court filing requirements, or may have been unaware of the statute of limitations does not warrant tolling.  See Keeling v. Warden, Lebanon Corr. Inst., 673 F.3d 452, 464 (6th Cir. 2012) (pro se status is not an extraordinary circumstance); Allen, 366 F.3d at 403 (ignorance of the law does not justify tolling); Cobas v. Burgess, 306 F.3d 441, 444 (6th Cir. 2002) (illiteracy is not a basis for equitable tolling); Rodriguez v. Elo, 195 F. Supp. 2d 934, 936 (E.D. Mich. 2002) (the law is "replete with instances which firmly establish that ignorance of the law, despite a litigant's pro se status, is no excuse for failure to follow established legal requirements); Holloway v. Jones, 166 F. Supp. 2d 1185, 1189 (E.D. Mich. 2001) (lack of professional legal assistance does not justify tolling); Sperling v. White, 30 F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (citing cases stating that ignorance of the law, illiteracy, and lack of legal assistance do not justify tolling).  Petitioner's

contention that his habeas claims have merit also does not justify tolling the limitations period. Holloway, 166 F. Supp. 2d at 1191. Petitioner fails to establish that he is entitled to equitable tolling under Holland.

Both the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit have held that a credible claim of actual innocence may equitably toll the one-year statute of limitations. McQuiggin v. Perkins, _ U.S. _, 133 S. Ct. 1924, 1928 (2013); Souter v. Jones, 395 F.3d 577, 588-90 (6th Cir. 2005); see also Holloway, 166 F. Supp. 2d at 1190. As explained in Souter, to support a claim of actual innocence, a petitioner in a collateral proceeding "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)); see also House v. Bell, 547 U.S. 518, 537-39 (2006). A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324. Significantly, actual innocence means "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.

Petitioner asserts that he is actually innocent based upon the alleged newly-discovered evidence discussed supra. Those documents, however, do not establish his actual innocence. While the documents concerning Joe Twilley (memo, letter, and related affidavits) may have some impeachment value, they do not show that petitioner is innocent of the crimes. Evidence which merely impeaches a witness is insufficient to support a claim of actual innocence. See In Re Byrd, 269 F.3d 561, 577 (6th Cir. 2001) (holding that

-13-

petitioner's "renewed attacks on [a] trial witness ['s] ... credibility ... do not provide proof of 'actual innocence' sufficient to excuse an abuse of the writ); see also Calderon v. Thompson, 523 U.S. 538, 563 (1998) (newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); Harris v. Stegall, 157 F. Supp. 2d 743, 750-51 (E.D. Mich. 2001). Hearsay is also insufficient to establish actual innocence. Knickerbocker v. Wolfenbarger, 212 F. App'x 426, 433 (6th Cir. 2007). Moreover, petitioner admitted participating in the crimes with his co-defendants in his police statement and the prosecution presented other evidence linking his co-defendants to the crimes.

Tyiesha Washington's affidavit is also not new or reliable evidence of petitioner's innocence. Her affidavit is not "new" given that petitioner was aware of her existence at the time of trial and testified that he was playing cards at her house on the night of the crime. Her affidavit is also not "reliable" given that she merely states that petitioner was at her house playing cards when the crime occurred without providing any dates or details and given that she provided the statement 17 years after trial. Such a long delay in coming forward renders her affidavit inherently suspect. Schlup, 513 U.S. at 331; Lewis v. Smith, 110 F. App'x 351, 355 (6th Cir. 2004) (district court properly rejected as suspicious a recanting affidavit made two years after trial); see also McQuiggan, 133 S. Ct. at 1928 (stating that a court should consider "unjustifiable delay on a habeas petitioner's part ... as a factor in determining whether actual innocence has been reliably shown"). Her affidavit also conflicts with petitioner's police statement, which was admitted at trial. Washington's affidavit does not establish petitioner's actual innocence.

Lastly, petitioner's challenges to the evidence presented at trial and his own

-14-

self-serving, conclusory assertions of innocence are insufficient to support his actual innocence claim. "A reasonable juror surely could discount [a petitioner's] own testimony in support of his own cause." McCray v. Vasbinder, 499 F.3d 568, 573 (6th Cir. 2007) (citing cases). This is particularly true, here, where petitioner gave the police an inculpatory statement. In sum, petitioner's "newly-discovered" evidence does not demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him of the crimes. Petitioner admitted participating with his co-defendants in the crimes in his police statement, which was admitted into evidence at trial, and the prosecution presented other evidence linking his co-defendants to the crimes. Petitioner is not entitled to equitable tolling of the one-year period. His habeas petition is untimely and must be dismissed.

### B.   Merits of Potentially-Timely Brady/False Testimony Claim

In his potentially-timely habeas claim, petitioner asserts that he is entitled to habeas relief because the prosecution withheld evidence that Joe Twilley was a police informant who was re-sentenced due to his cooperation with police and who testified falsely about such matters at trial. Petitioner alleges a violation of his pre-trial discovery request and his constitutional rights.

To the extent that petitioner alleges a violation of the trial court's discovery order or state discovery rules, he is not entitled to federal habeas relief. A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Trial court errors in the application of state procedure or evidentiary law are not cognizable as grounds for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Thus, any claim that the prosecution

violated the trial court's discovery order does not provide a basis for federal habeas relief and must be denied.  Lorraine v. Coyle, 291 F.3d 416, 441 (6th Cir. 2002).

Petitioner also asserts a violation of his federal constitutional rights.  It is well-settled that there is no general constitutional right to discovery in a criminal case.  Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Presser, 844 F.2d 1275, 1281 (6th Cir. 1988).  A prosecutor's failure to disclose evidence favorable to the defense, however, may constitute a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  To find a Brady violation, not only must the evidence be suppressed, but the suppressed evidence must be material and favorable to the defense.  Elmore v. Foltz, 768 F.2d 773, 777 (6th Cir. 1985).

Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  United States v. Bagley, 473 U.S. 667, 682 (1985); see also Kyles v. Whitley, 514 U.S. 419, 432-36 (1995).  Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce."  United States v. Clark, 988 F.2d 1459, 1467 (6th Cir. 1993).  The duty to disclose favorable evidence includes the duty to disclose impeachment evidence.  Bagley, 473 U.S. at 682; Giglio v. United States, 405 U.S. 150, 154-55 (1972).

The Brady rule only applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense."  United States v. Agurs, 427 U.S. 97, 103 (1976); see also Mullins v. United States, 22 F.3d 1365, 1370-71 (6th Cir. 1994).  Thus, in order to establish a Brady violation, a petitioner must show that:  (1)

-16-

evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of guilt.  Carter v. Bell, 218 F.3d 581, 601 (6th Cir. 2000); see also Strickler v. Greene, 527 U.S. 263, 281-82 (1999); Robinson v. Mills, 592 F.3d 730, 735 (6th Cir. 2010).  The petitioner bears the burden of establishing a Brady violation.  Carter, 218 F.3d at 601.

As an initial matter, the Court notes that petitioner cannot establish a Brady violation with respect to prisoner Hewitt-El's 1998 letter (or related 2012 letter) because those materials were clearly not available to the prosecution in petitioner's case in 1995.  A prosecutor's duty to disclose exculpatory evidence to a defendant under Brady does not continue after the defendant is convicted and the case is closed.  District Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 68 (2009).  The information was also available from another source – the prisoners who authored and received the letter.

With regard to Agacinski's memo, the underlying information was available from other sources – the defense attorneys who discussed the matter with Agacinski.  The memo itself, however, was likely only available to the prosecution at the time of petitioner's trial.  While the memo does not provide exculpatory evidence, it arguably provides impeachment evidence for Joe Twilley's testimony, which would have been favorable to the defense.  The remaining question is materiality.

"In general, impeachment evidence has been found to be material where the witness at issue 'supplied the only evidence linking the defendant[ ] to the crime' . . . or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case."  United States v. Payne, 63 F.3d 1200, 1210 (2d Cir. 1995) (internal

quotations and citations omitted).  Such is not the case here.  Petitioner's jury could have discounted Twilley's testimony altogether and still found petitioner guilty of felony murder and felony firearm based upon petitioner's police statement in which he admitted participating in the crimes with his co-defendants, as well as the other evidence linking his co-defendants to the crimes.  The jury was also aware that Twilley had cooperated with police, testified against fellow prisoners in other cases, and received a sentencing reduction and was no longer in prison at the time of trial.  While the memo may have provided a means of impeaching his testimony, it was not the only means.  "Where the undisclosed impeachment evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material" under Brady.  Byrd v. Collins, 209 F.3d 486, 518 (6th Cir. 2000) (quoting United States v. Avellino, 136 F.3d 249, 257 (2d Cir. 1998)); see also Jalowiec v. Bradshaw, 657 F.3d 293, 313 (6th Cir. 2011) (quoting same language and citing Robinson, 592 F.3d at 736); Montgomery v. Bobby, 654 F.3d 668, 681-82 & n. 6 (6th Cir. 2011).

Lastly, in light of petitioner's confession to police that he participated in the crimes with his co-defendants and the other evidence linking the co-defendants to the crimes, it cannot be said that there is a reasonable probability that, had the memo been disclosed to the defense, the result of the trial would have been different.  Habeas relief is not warranted on this claim.

As to the issue of false testimony, the United States Supreme Court has made clear that the "deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice." Giglio v. United States,

405 U.S. 150, 153 (1972). It is thus well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976) (footnote omitted); see also Napue v. Illinois, 360 U.S. 264, 271 (1959); Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1998). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew that the statements were false. Coe, 161 F.3d at 343. A habeas petitioner bears the burden of proving that the disputed testimony constituted perjury. Napue, 360 U.S. at 270.

In this case, petitioner fails to show that Joe Twilley's testimony about the co-defendants' admissions to him were actually false. Neither the Agacinski memo nor the Hewitt-El letters establish that Twilley testified falsely about those matters. Rather they indicate that Twilley may have minimized the extent of his police cooperation and/or lied about the benefits that he received from such cooperation when he testified at trial. While such information, if admissible, would have served as impeachment material, it would not have affected the outcome at trial. As noted, Twilley's credibility was contested at trial. More importantly, given the admission of petitioner's police statement in which he confessed to participating in the crimes with the co-defendants and given the other evidence linking his co-defendants to the crimes, there is no reasonable likelihood that the alleged false testimony would have affected the judgment of the jury. Habeas relief is not warranted on this claim.

## IV.  CONCLUSION

Based upon the foregoing discussion, the Court concludes that petitioner did not file his petition within the one-year limitations period established by 28 U.S.C. § 2244(d), that he is not entitled to statutory or equitable tolling, and that the statute of limitations precludes review of his habeas claims.  The Court further concludes that his potentially-timely claim lacks merit and does not warrant habeas relief.  Accordingly, the Court **GRANTS** respondent's motion, **DENIES** habeas relief on the potentially-timely claim, and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Given the Court's determination that the petition is already untimely and that petitioner is not entitled to habeas relief on his potentially-timely claim (involving the same Brady/false testimony issues raised in his motion), a stay of the proceedings is unwarranted.  Accordingly, the Court **DENIES** petitioner's motion to stay the proceedings.

Before petitioner may appeal the Court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue only if a habeas petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies habeas relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong.  Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).  When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it

debatable whether the court was correct in its procedural ruling.  Id.

Having conducted the requisite review, the Court concludes that jurists of reason would not find the Court's procedural ruling debatable and that petitioner has not made a substantial showing of the denial of a constitutional right as to his potentially-timely claim. Accordingly, the Court **DENIES** a certificate of appealability.  The Court also **DENIES** leave to proceed in forma pauperis on appeal as an appeal cannot be taken in good faith.  See FED. R. APP. P. 24(a).

**IT IS SO ORDERED**.

Dated:  March 1, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 1, 2017, by electronic and/or ordinary mail and also on Bernard Howard #243327, Muskegon Correctional Facility, 2400 S. Sheridan, Muskegon, MI 49442.

s/Barbara Radke
Deputy Clerk

---